All right, so our first case for the morning is case number 21-2298. That's Rinaldi v. United States of America. We have, is it Ms. Chima first? All right, so we have Ms. Chima for five minutes, then Ms. Durrani for five minutes, then Mr. Liu, and supervising attorney, Mr. Dooley, have we already granted the necessary motions? Yes, Your Honor, and to be clear, they're happy to divide the time as the court likes. I would like to reserve four minutes for the rebuttal. Please, grant it. All right, so if Ms. Chima wishes to go first, please, whenever you're ready. Thank you, Your Honor, and may it please the court. Alongside my colleagues, Ayesha Durrani and Brian Liu, we are pro bono counsel for Mr. Rinaldi. I will explain why Mr. Rinaldi's claims are cognizable under Bivens and the FTCA. Ms. Durrani will explain why the district court erred in granting summary judgment, and we would like to reserve four minutes for rebuttal by Mr. Liu. Great. Mr. Rinaldi has been waiting 11 years to tell a simple story to the jury about prison officials' deliberate indifference to his assigned cellmate's threat to kill him. The district court erred in granting summary judgment and preventing him from telling this story. This court should vacate that grant, and on remand, Mr. Rinaldi should be permitted to tell his story under Bivens and the FTCA. First, this court has already held twice that Bivens extends to the exact context that Mr. Rinaldi's claim raises. That's before, you're talking about Bistrian and Shorter. Those predate Egbert. Egbert says specifically there are three cases, and it did not list Farmer versus Brennan among them, right? So why isn't that intervening Supreme Court precedent one that requires us to rethink whether the Farmer context counts as a fourth one? This court has already, both in Ziegler and Hernandez, which occurred before Bistrian and Shorter, the Supreme Court had made similar statements, saying there's three cases where we have recognized a Bivens remedy, and this court held in both of those cases that those did not undermine Farmer as controlling precedent because the court could simply have understood Farmer as falling under the Bivens context of Carlson. But doesn't Egbert change that? No, Your Honor, we do not believe. He says only the three. And Egbert also says, you know, there may have been situations where we assumed a Bivens remedy, but don't count that as that we have held that a Bivens remedy is implied. And Farmer is pretty much right on. There was really no discussion about whether the Bivens remedy even exists. They just allowed the claim to proceed, the prisoner on prisoner claim. Isn't that correct? First, Your Honor, the court had made very similar statements in Ziegler and Hernandez, saying there were three. So we do not believe that the statement in Egbert was any stronger than those. Second, the court, in talking about assumptions, referred to a previous court case, Hartman, which had assumed the existence of Bivens context for First Amendment retaliation claims. After Hartman, the Supreme Court had repeatedly said that was an assumption, and it had repeatedly said explicitly, we have never held this. Egbert did not do anything new in saying that it was an assumption, and then reaching the question that Hartman had not. Now, Egbert applied and clarified the required Bivens two-step analysis. Farmer never applied that two-step analysis, right? Farmer did not, no. Okay, your case doesn't survive under Bivens, Davins, or Carlson, right? The Bivens piece of this case hinges on Farmer, right? We believe that this court could find, as it had stated in previous decisions, that Farmer was part of Carlson, and that is why the Supreme Court did not feel the need to go into the next step of the special factors analysis, in which case this case would survive as an application of Carlson. I'm sorry, Carlson was a very different case. That involved the administration of medical care in the prison. This is prisoner-on-prison violence. This is a new context. This is not, I mean, granted, it's under the Eighth Amendment, but it's a new context, and we need to look at whether this should be allowed to proceed, giving hesitation, if you will, and now Egbert has put a more stringent requirement that if there's any way that we think that the courts should not be doing this and Congress should be doing it, it's not just a several-factor test. If there's any reason, why is it their reason here to say, well, you know, this has to do with prison administration, with what's going on in the prisons. We really shouldn't be doing this. Why should we, shouldn't we say that there is no implied cause of action? No, Your Honor. We believe that this court is bound by its decisions in Bistrian and Shorter. The court said that Farmer recognized a Bivens remedy. If this court believes that that was wrongly decided, we believe it needs to go en banc, because under this court's internal operating procedures, en banc review is necessary to overturn a prior precedential opinion. Unless there's been intervening authority. Yes, Your Honor. We would say, why wouldn't Egbert be that intervening authority? The standard is that the decision is in conflict with intervening Supreme Court authority. We do not believe Egbert creates a sufficient conflict. The Supreme Court was simply restating what it has said multiple times, and it did not say anything about Farmer itself, even though it had for First Amendment retaliation claims. Speaking about prior penal precedent, we handed down Rinaldi one, and then we handed down Xi, and yet you're telling us that Xi should cause us to deviate from Rinaldi one. How can that be given the prior, the first-in-time penal precedent rule? Your Honor, I'm out of time. Can I? Please answer the question. Yes. We are not asking for Rinaldi one to be overturned. We believe that Rinaldi one's statement about the unconstitutional act was dicta. It was a single footnote, and the court did not reach the issue. It was not essential to the opinion. We think Xi is the precedential holding here, and Xi clearly states that the unconstitutional, that a plaintiff need only allowed a constitutional violation to get past the discretionary function exception, so we are asking the court to apply its precedent, just as we are for Bivens. We were asking the court to apply its precedence in Bistrian and Shorter. Thank you.  To survive summary judgment, Mr. Rinaldi was required only to show that a genuine material dispute of fact existed, and that there was enough evidence for a jury drawing all inferences in his favor to find for him. At the summary judgment phase, Mr. Rinaldi's facts were entitled to a presumption of belief, and the lower court was not permitted to engage in credibility determinations. The record makes clear that several genuine material disputes of fact exist, each of which should have been enough on their own to preclude summary judgment. Okay, let's talk about the evidence. What concrete evidence is there that Officers Basor, Gee, and Kissel had actual knowledge there was at risk of harm? Lots of prisoners talk trash. Lots of them threaten. Here we have an inmate. This inmate's a couple decades older than Rinaldi. They weren't separate tees. They didn't know each other. So what evidence shows the defendants knew Pink would likely harm Rinaldi? Yes, Your Honor. In Mr. Rinaldi's deposition, as well as his sworn statements, his complaint, which the law of this court says can be taken as an affidavit, Mr. Rinaldi describes conversations with defendants Basor, Kissel, and Gee, which indicate that all three of them knew he was being moved to a cell with Mr. Pink. Indicate that all three of them knew. Give me some specifics. Your Honor, Mr. Rinaldi describes a conversation with defendant Basor where she tells him that if he continues to file administrative remedies, she'll move him to a cell with someone who will assault him. As to defendant Kissel, Mr. Rinaldi describes a conversation in his sworn statements where he, where defendant Kissel says that defendant Basor's decision is over his head. And though he understands that Mr. Rinaldi may be assaulted, he's in no position to stop it. And Mr. Rinaldi describes a conversation with defendant Gee as he's being moved to the new cell, where Mr. Gee indicates that he too is aware that Mr. Rinaldi is in danger of physical harm. And where were those in the record? Your Honor, Mr. Rinaldi describes those conversations both in his complaint, his amended complaint, and in the first deposition that defendants took. Okay. Now, the district court really ignored the objections he filed to the statements of the defendants based on a local rule. How should we view that determination? Yes, Your Honor. We believe that part of the reason that the lower court found that there was no dispute of facts is because the court took defendant's statement of facts as undisputed. And in the lower court ruling, in a footnote, the court wrote that the reason for this was that Mr. Rinaldi did not comply perfectly with the guidelines set out in Rule 56.1, which required him to produce a numbered statement of facts for the court that responded to defendant's statement of facts. Now, the law- Backing that, that the other side would be viewed as undisputed, correct? Yes, we believe that the court incorrectly deemed defendant's facts undisputed, though there was other record evidence that the court could have looked at. But in regards to that 56.1 statement specifically, the law of this court, as this court mentioned in Mala v. Crown Bay Marina, is that sometimes procedural rules must give way when dealing with a pro se, particularly incarcerated litigant. And Mr. Rinaldi made clear to the lower court that he lacked access to the local rules for the Middle District of Pennsylvania. He had no way of complying with 56.1. Well, thank you. And I take it Mr. Liu will wait for rebuttal then? Okay, so we'll hear from Mr. Shaw. Thank you. May it please the court, Waley Shaw for the defendants' appellees. I'd like to begin with the question on which this court directed briefing, which is whether a plaintiff has a Bivens remedy under the Supreme Court's decisions in Farmer and Egbert. The answer is no, because Egbert makes clear that Farmer cannot be interpreted as a recognized Bivens context, abrogating this court's decisions in Bistrian and Shorter. As this court has often explained, a panel of our court may decline to follow a prior decision of our court without the necessity of an en bas decision when the prior decision conflicts with the Supreme Court decision, and that is the case here. But Egbert doesn't mention Farmer or Bistrian or relate in any way to those cases. And in fact, there were amicus briefs filed asking the Supreme Court in determining Egbert to please tell us what's the status, continued status of Farmer and Bistrian, and the court didn't speak to it at all. So how can we say categorically that, aha, there's Farmer and Bistrian no longer good law? Well, there was good reason for the court not to address Farmer, which is obviously that it was not an issue that was presented before the court. The claim there was a First Amendment retaliation claim, and so the court, the case that the court cited was Hartman, but the analysis that the Supreme Court applying to Hartman in recognizing that it did not establish the Bivens context is exactly the same that applies to Farmer. But Farmer is still good law. Farmer is absolutely good law, and we don't dispute that it supplies the governing constitutional standard for evaluating a failure to protect claim, but that is separate from saying that Farmer established a new Bivens remedy, and Egbert governs that analysis, and it says that we cannot interpret Farmer in that fashion. And I would point, and unfortunately this was not cited in our briefs, but we, you know, this court has in prior cases recognized that Supreme Court decisions that change the underlying analytical framework can undermine a prior panel decision of this court, and therefore permit or require reexamination of those precedents. So for example, if United States versus Singletary, this is 260 F3rd 196 at 202, this court said that the Supreme Court's Commerce Clause jurisprudence in criminal cases since Lopez necessitates a reexamination of our analysis in a prior decision. And the same in Carnes versus Shanahan 879 F3rd 504, where the court said that a prior panel decision had to be revisited in light of an intervening shift in the applicable 11th Amendment immunity analytical framework. So here again, Egbert now provides a governing rule about how to evaluate or how whether cases like Farmer and Hartman can be considered to recognize the new Bivens remedy. All right, so this is a new context then. Yes. And we have a situation where an employee of the prison is intentionally subjecting a prisoner to torture, pain, suffering, whatever, retaliation for the filing of grievances. Now, on the one hand, you might say, oh, well, there's an administrative process, there's grievances, so we should hesitate and we shouldn't do it. But courts deal with retaliation all the time. That's basically a court-created remedy or court-created, something we deal with all the time. Congress doesn't deal with that. Why shouldn't we say in this situation of prisoner-on-prisoner violence, where, and it's not just prisoner-on-prisoner violence, it's where prison officials are purposely putting prisoners in harm's way. Why should we not let prisoners be able to sue for this type of situation? All right, I think there are two problems with that analysis. One is, I think it looks at the, considers the special factors at the wrong level of generality. Egbert made clear that courts should not look to the facts of the particular case. So the Supreme Court said, a court should not inquire, as the Court of Appeals did here, whether Bivens relief is appropriate in light of the balance of circumstances in the particular case. A court inevitably will impair governmental interests and therefore frustrate Congress's policymaking role if it applies the special factors analysis at such a narrow level of generality. So the court instead must ask more broadly on whether there's any reason why judicial intrusion into a given field might be harmful or inappropriate. And here, we submit that judicial intrusion into this field will be inappropriate. And if you look at the- I mean, this just isn't a prisoner, the prison official deciding where someone should be housed. It's not merely what this is. This is putting someone in harm's way specifically because they've been filing grievances. I mean, that's something the court should be dealing with, shouldn't they? I don't think that's correct, Your Honor. I think it's absolutely- I think it's clear from Egbert and Abbasi first that it's not relevant whether there's a claim of malfeasance in a particular case, that something was done for a retaliatory motive. So in Egbert, the court said it was irrelevant that the agent supposedly did not act pursuant to his law enforcement mission. And furthermore, the question for special factors purposes is whether judicial intrusion into the field would be inappropriate. And here, the field concerns whether, in a situation like the SMU, where the BOP has a policy of not allowing single cell assignments, because the purpose of the SMU is to help disruptive prisoners learn to get along with each other, you know, there has to be a balancing of that mission versus purported safety concerns or threats. But that's not the issue in the case. The issue in the case isn't the prison policy of single cell, single prisoner cells. It has to do with prison officials purposely retaliating in light of someone and in response to someone exercising their right to file grievances. And not just retaliating in some minor way, but I'm gonna put you somewhere where you're gonna be in a cell with somebody that's gonna have a problem with you. Well, if that's the case, then this would be an entirely different claim altogether. I think Your Honor is basically referring to some sort of First Amendment retaliation claim, which is precisely the type of claim that Egbert rejected, holding that courts cannot recognize a new Bivens remedy for First Amendment retaliation. So whether we consider the claim to be along the lines of what Egbert rejected, or whether we treat this as a failure to protect claim, I think it's clear that judicial intrusion into this field of prison management, into the balancing of multiple penological interests, I think there is certainly a rational reason that Congress is better placed to decide whether such a Bivens remedy is appropriate. And for that reason, this court should not recognize a new Bivens remedy. If I may, I'd like to turn to the FTCA question. First of all, I think opposing counsel suggested that this court's holding in Rinaldi one was dicta, and I think that cannot be the case, and this is referring to footnote 15. In Rinaldi, I'm sorry, in Rinaldi one, plaintiff made the same argument that he does here, that the discretionary function should not apply because he alleges unconstitutional action. So in order to decide the case against him, this court necessarily had to reject that argument, and it did so in footnote 15. So that footnote is necessary to the judgment in that case, and it is in no way dicta. Dictum. I'm sorry, thank you, Your Honor, dictum. And so given that holding, it is this court's obligation to apply the panel precedent that is prior in time, and that is the Rinaldi one holding, and I think it's unsurprising that a prior published precedential panel decision in this very case should be binding on the result here. Plaintiff Rinaldi did not seek en banc review, has made no further attempt to revisit those claims, and those claims have been out of the case for quite some time, and plaintiff should not be permitted to relitigate those claims here. And then finally, turning to the merits, I think the simplest way to consider the merits of Plaintiff Rinaldi's constitutional claim is to realize that there is no evidence that any of the defendants in this case were directly involved or involved at all in the decision either to assign Rinaldi to a cell with Pink, or after Pink made a threat, to continue to house Mr. Rinaldi with Mr. Pink. And that's the case because the first set of defendants, which is Counselor Basore, and then defendants Kissel and Gee, they were part of the unit team on Block Z, which is where Rinaldi was originally housed, so they had responsibility for housing assignments on that block, but they had no responsibility for housing assignments on unit, I'm sorry, on Block D, which is where Rinaldi was transferred. So they had no authority over whether Mr. Rinaldi was to be housed with Mr. Pink, and there's no indication in the record that they had or did exercise any such authority. Then if we look at- Well, they had to exercise some authority because he was moved. Basore had him moved so that somebody could beat him up. So even if they were part of the- And Kissel and Gee knew that. Even if Basore, Kissel, and Gee were part of the transfer decision, that is not what Mr. Rinaldi is fundamentally complaining about. His complaint is that he was housed with Mr. Pink. So presumably, if he had a different cellmate on Block D, he would not be asserting any kind of Bivens or FGCA claim. So the transfer decision actually has very little to do with his claims. It's really the cellmate assignment that Mr. Rinaldi is complaining about. And again, there's no evidence that Basore, Kissel, and Gee had anything to do with that cellmate assignment. And the same is true for Mr. Beaver and Mr. Raup, who did work on Block Z, but were not part of the unit team that was responsible for making those decisions. And so in their affidavit, which Rinaldi has not disputed, they expressly say that they were not aware of any information intelligence, separation concerns, or specified threat indicating that Pink and Rinaldi were incompatible cellmates. Furthermore, they were not involved in determining which block Rinaldi was to be housed on, had no involvement in determining Rinaldi's cell assignment, and did not participate in any conversation about the decision to house Rinaldi and Pink together after the aforementioned February 2, 2012 statement. So they didn't- But they were aware that Pink threatened not only whoever they put in the cell, but also the officer who put him in. And they reported him. They moved him out. But then when he had purportedly calmed down, put him back in the cell with Rinaldi a couple hours later. So do you really do that? When you have then, you've written up someone, you've filed a complaint because he was threatening. It was a really, and a pretty serious threat in order for them to write him up, I would think. But do you really then put him back in the cell two hours later? So a couple points on that. First of all, there's no evidence in the record that Defendants Beaver and Ralph had anything to do with the decision to return Pink to the cell with Rinaldi or to keep housing them together. In fact, their affidavits expressly- Who did? Didn't they put him back in? No, and actually Mr. Rinaldi expressly states in his deposition that he doesn't know who brought Pink back to the cell. He does not say that it was Mr. Beaver and Mr. Ralph. And Mr. Beaver and Mr. Ralph's depositions, I'm sorry, their affidavits expressly state that they had no, that they did not participate in any conversation about the decision to house Rinaldi and Pink together after the purported threat. So there's no indication they were- Participating in a conversation is different from them physically moving him back in. Regardless, there is no evidence in the record whatsoever that Beaver and Ralph were part of the decision to return Mr. Pink to the cell or were present when it happened. What they did do, and which was entirely appropriate, was that they reported the threat through the appropriate channels. Mr. Beaver wrote an incident report. Mr. Ralph was part of that reporting process. And at that point, it was up to the unit team in Block D to decide whether Mr. Pink and Mr. Rinaldi should continue to be housed together. Now, none of the members of that unit team are actually defendants in this case. So ultimately, what we have is that none of the defendants here were personally involved in any, even if there were a constitutional violation, there was no personal involvement by any of the defendants in this case. If the court has no further questions. Thank you, Mr. Shaw. Thank you. Very well. Mr. Liu, I think you have five and a half or four and a half minutes. Okay. Thank you, Your Honor. Four quick points in response to the government's argument. First, with respect to the authority of Officers Beaver and Ropp to reassign Mr. Rinaldi, I would point out that in Joint Appendix 353, the BOP has a policy of allowing staff members to categorize separatees as separatees in the Central Inmate Monitoring System. Our argument is that Officers Beaver and Ropp, the moment they heard the threat Mr. Pink made towards Mr. Rinaldi, that it should have been incumbent on them to put them in the separatee system. So Officers Beaver and Ropp had the authority to categorize these inmates as separatees and they failed in their duty to do so. Well, they put him in a locked shower while they dealt with Pink, but if we don't know that they're the ones that put him back in a couple hours later, how, I mean, they did separate them. So how do we fault them if we don't know if they're the ones that put him back in? Because it wasn't the separation, it was putting him back in that caused the harm. Yes, Your Honor, so once they separated Mr. Rinaldi, Officers Beaver and Ropp should have been on notice that these prisoners should not be housed together under any circumstances. What's the source of a legal obligation that any time one prisoner talks trash, I mean, lots of prisoners want to have no cellmate. Every time they say that, they've got to separate them? No, Your Honor, the standard is deliberate indifference to a significant risk of harm. What makes them aware this significant reference simply because Pink is talking trash? I would point to the defendant's own conduct, Your Honor. The defendant's, Officers Beaver and Ropp, took the decision to cite Mr. Pink with a Code 203 violation. That's the second highest tier of a disciplinary violation once they overheard the threat. If they thought it was a joke or a jest or something that wasn't entirely serious, they could have chosen to take no action. Okay, let's move on. Your colleague described Rinaldi one as dictum. I'm looking at footnote 15 and it goes specifically to the district court's reasonably construing it as an FECA claim. He claims it was erroneously dismissed and Rinaldi one declines to overturn that dismissal. That seems like an essential step of upholding the dismissal. That's not dictum. That's part of the ratio dissidentity of the case. Your Honor, I think the test, the litmus test for whether that line in footnote 15 is dictum is if you strip out that line from the opinion, does the holding change? And the precise holding and the issue on appeal in Rinaldi one was whether the housing of prisoners, housing of prisoners is a discretionary act for the purposes of discretionary function exception. Under the FTCA. Yes, Your Honor. And so that was a precise issue on appeal and the discussion of the unconstitutional acts exception that this court later discussed in Haugen did not factor into that holding. It was in a minor footnote that lower courts, including Thieme and the District of New Jersey have expressly treated as dicta. So it was not necessary as the holding where Rinaldi one found that the housing of prisoners is a discretionary act. The footnote 15 is dicta. And as such, Haugen's later in time opinion announcing that unconstitutional acts are outside the discretionary function exception does not violate the law of the circuit or the law of the case. Your next point. Yes, Your Honor. Judge Rendell, with respect to your question about the lack of discussion of Farmer and Egbert, I think that gets to our point about how lower courts are not supposed to overturn, the Supreme Court is not supposed to overturn its own opinion sub salientio. There was no mention of Farmer in Egbert and the absence of an express revocation of Farmer in the absence of a clear statement, we don't think it's the province of this court to assume that the Supreme Court has discarded Farmer. And similarly- There would be no occasion in Egbert really for them to, unless they wanted to talk about all the other situations in which they may have assumed a Bivens claim that aren't on point to the discussion of the First Amendment in Egbert. I mean, it would be a little strange if they did drop a footnote and say, oh, and by the way, you know, prisoner-on-prisoner violence, you know, it just, it's understandable that they wouldn't say it directly. But they did say, you know, you can't assume in cases where we have assumed that we're holding that that really is a cause of action. So I think it might've been, while I made that point, I think it might've been unusual if they did go out of their way in Egbert. Yes, Your Honor. I see that my time is up. May I respond? Yes, please go ahead and respond. Go ahead. Thank you. The Eighth Amendment was not on appeal in Egbert, but the language of Egbert and its predecessors in Ziegler and Hernandez offered quite a bit of wiggle room. The language in Ziegler is whether a case is meaningfully different from the trifecta of cases in Carlson, Davis, and Bivens. The Supreme Court, if it wanted to fully overrule all prior Bivens remedies and limit Bivens, Carlson, and Davis to its facts, could have simply said, we are limiting it to its facts, or they could have expressly overturned Bivens entirely, but they said, we are limiting Bivens to these three cases and cases that are not meaningfully different from these cases. We think Farmer is one of those cases that sprout out from Carlson, and as this Court held in Bistre and in Shorter, we think Farmer and Carlson control in this case. And if there are no further questions, Your Honor. I'd like to thank you for your argument. Both sides well argued, and as I understand it, Mr. Dooley and Liu and Ms. Chima and Durrani, you were appointed by this Court. We thank you for taking this Court appointment and assisting us as an essential part of the adversarial process. We'll take the matter under advisement.